IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH W. CONSONERY, JR., ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 09-1510 |
| ) | |
| ) | Magistrate Judge Maureen P. Kelly |
| WARDEN JOSEPH W. PELZER; SENIOR ) | |
| CAPTAIN EDWARD STRAWN; ) | |
| (CAPTAIN) MICHAEL KING; (OFFICER) ) | |
| CHRIS CAIN; (OFFICER) JOHN ) | Re: ECF No. 76 |
| STAPELTON; (DISTRICT ATTORNEY) ) | |
| STEVEN M. TOPRANI; JOHN TEAMUS, ) | |
| (Deputy Warden) NURSE ESTHER ) | |
| WASHINGTON COUNTY, ) | |
| Defendants. ) | |

**OPINION AND ORDER**

**KELLY, Magistrate Judge**[1]

Presently before the Court for disposition is Defendants' Motion for Summary Judgment [ECF No. 76]. For the following reasons, the Motion for Summary Judgment is granted as to Plaintiff's punitive damages claim against Washington County, his First Amendment retaliation claim, and as to Defendant Steven M. Toprani. Defendants' Motion for Summary Judgment is otherwise denied.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

On February 6, 2009, Plaintiff Joseph Consonery, was taken into custody pursuant to an Order of the Court of Common Pleas of Washington County, and incarcerated at the Washington County Correctional Facility ("WCCF"). Upon his arrival, Plaintiff informed a WCCF nurse that he had an infected tooth and that he needed to see a dentist. [ECF No. 77-12]. Within days,

---
[1] Plaintiff's action was reassigned to the undersigned Magistrate Judge on June 20, 2011.

Plaintiff's tooth "snapped," causing severe pain and ongoing bleeding. Plaintiff filled out at least nine requests for medical care and, for the next five months, sought to have appropriate medical treatment. Plaintiff alleges that his written requests for treatment were returned to him and never submitted by the charge nurse.

Plaintiff's deposition testimony indicates that although he complained both in writing and verbally to the Defendants about his tooth pain, Plaintiff was not seen for an initial evaluation by the WCCF Physician's Assistant until March 23, 2009. The Physician's Assistant examined Plaintiff, observed swelling in Plaintiff's jaw and a "rotten molar." The swelling was noted to be a sign of infection, and Plaintiff was prescribed an antibiotic. Plaintiff was referred to Dr. Dietrich, the WCCF contract dentist, who provided routine dental treatment to inmates housed at the WCCF. [ECF No. 77-13]. Dr. Dietrich examined Plaintiff on March 31, 2009, and confirmed that Plaintiff had a decayed molar which needed to be evaluated for extraction by an outside oral surgeon, primarily because of the location of the molar and Dr. Dietrich's inability to perform the extraction at WCCF. [ECF No. 77-14].

Defendants did not make the necessary arrangements to treat Plaintiff. Officials at the WCCF determined that Plaintiff's medical treatment was not an emergency and informed him that he would be required to make arrangements for further treatment through a "furlough." Pennsylvania law provides for furloughs, which result in a temporary release from custody, as follows:

> (a) Generally.--Notwithstanding any provision of law, if any offender has been sentenced to undergo imprisonment in a county jail for a term of less than five years, the court, at the time of sentence or at any time thereafter upon application made in accordance with this section, may enter an order making the offender eligible to leave the jail during necessary and reasonable hours for the purpose of working at his employment, conducting his own business or other self-employed

2

> occupation, including housekeeping and attending to the needs of family, seeking employment, attending an educational institution, securing medical treatment or for other lawful purposes as the court shall consider necessary and appropriate.

42 Pa. Cons. Stat. Ann. § 9813 (West).

Defendant Warden Joseph Pelzer recalled discussing a furlough for Consonery with medical staff, but he concluded "our courts would not have granted it. He had a state sentence."[2] [ECF No. 81-4, p.2]. Although Plaintiff made repeated attempts to schedule an appointment with an outside dentist and to obtain a furlough, he was unsuccessful and, with the exception of a single course of antibiotics, his decayed broken molar remained untreated. See, e.g., ECF No. 77-3, p. 11. Despite Warden Pelzer's belief that Plaintiff was ineligible for furlough, Defendants failed to make any arrangements for the tooth to be extracted while Plaintiff was in their custody. Defendants operated under the belief that unless Plaintiff suffered a "medical crisis," there was no obligation to treat Plaintiff while he remained in Defendants' custody (through, perhaps, an escort to an oral surgeon's office). [ECF Nos. 77-4 – 77-11]. Thus, having determined that Plaintiff's condition was not a medical emergency, Defendants opted to leave Plaintiff untreated.

On June 5, 2009, Plaintiff was placed in the custody of the Pennsylvania Department of Corrections. On June 11, 2009, Plaintiff was transferred to the State Correctional Institute at Camp Hill, and he received the necessary dental treatment. [ECF No. 48, ¶ 28].

---

[2] Defendant Warden Pelzer is incorrect regarding legal qualifications for a furlough. In 2004, the Pennsylvania Superior Court recognized the availability of furloughs for inmates incarcerated in a county jail for a term of less than five years upon application and approval of the sentencing court, regardless of whether the sentence was a "county" or "state" sentence. Com. v. Mefford, 863 A.2d 1206, 1210 (Pa. Super. 2004). Defendant Pelzer's belief that a furlough was unavailable, however, is evidence of his subjective understanding regarding Washington County's policy regarding its responsibility to provide necessary medical treatment.

Defendants have filed a Motion for Summary Judgment, contending:

1. Plaintiff cannot establish that Defendants acted with deliberate indifference to a serious medical condition so as to create an issue of fact with regard to his Eighth Amendment claim;

2. Plaintiff cannot establish that he suffered a serious medical need;

3. Plaintiff cannot establish that Defendant Washington County is liable for withholding necessary medical treatment pursuant to custom or policy so to cause the violation of his constitutional rights;

4. Plaintiff's Complaint fails to state claims against Defendants King, Pelzer, Toprani,[3] Temas, Delsandro, Strawn, Cain and Stapleton;

5. Defendants are entitled to Qualified Immunity;

6. Plaintiff cannot recover punitive damages against Washington County Prison;

7. Plaintiff has failed to state a claim for conspiracy; and,

8. Plaintiff has failed to produce evidence sufficient to show that he was punished for demanding medical treatment.

For the reasons set forth below, Defendants' Motion for Summary Judgment is granted with regard to Plaintiff's claims for punitive damages as to Washington County, his First Amendment Retaliation Claim and his claims as to Defendant Toprani. The Motion is denied in all other respects.

---

[3] Plaintiff previously stipulated to the dismissal of Defendant Toprani and this action is terminated against him. [ECF No. 81, p. 30].

## II. STANDARD OF REVIEW

Summary Judgment is appropriate only where there are no genuine issues of material fact. Matsushita Elec. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). While the moving party must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 586–87 (1986) (emphasis in original removed).

In evaluating the evidence, the Court must view the facts and the inferences to be drawn therefrom in a light most favorable to the non-moving party. Anderson, 477 U.S. at 255. At the summary judgment stage, the Court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249. When examining the record to see if there are genuine issues of material fact, the Court's focus is on issue finding, not on issue resolution.

## III. DISCUSSION

### A. Eighth Amendment Claim.

Defendants contend that they are entitled to the entry of summary judgment in their favor because the evidence adduced to date fails to establish that Defendants knew or were aware of a risk to Consonery's health. Defendants contend that his medical care was sufficient to withstand a constitutional challenge because he was seen by a physician's assistant five to six weeks after

5

his initial complaint of tooth pain, he was prescribed an antibiotic, and he was seen by a dentist two weeks later. Defendants argue that they were under no obligation to provide the tooth extraction, given the paucity of evidence of continued infection, and any interference with his ability to obtain a tooth extraction was "de minimus." [ECF No. 77, p. 17]. Defendants contend that Plaintiff's condition was not exacerbated by the failure to arrange for a tooth extraction and that, at best, Plaintiff establishes negligence, which is insufficient to support a constitutional challenge.

Defendants' obligation to provide medical treatment is not as narrow as portrayed in Defendants' Brief in Support of the Motion for Summary Judgment, ECF No. 77.

> In accordance with the "broad and idealistic concepts of dignity, civilized standards, humanity, and decency" encompassed by the Eighth Amendment's prohibition against cruel and unusual punishment, the government is obliged "to provide medical care for those whom it is punishing by incarceration." In part, this obligation arises due to a prisoner's inability to access medical care on his or her own, but more importantly, denial of proper medical care may in some instances lead to "pain and suffering which no one suggests would serve any penological purpose." Therefore, "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment ... [W]hether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."

Stewart v. Wagner, CIV.A. 06-3460, 2012 WL 274941 *3 (E.D. Pa. Jan. 30, 2012)(footnotes and citations omitted).

Plaintiff alleges a violation of his Eighth Amendment right to be free from "cruel and unusual punishment" because Defendants were allegedly deliberately indifferent toward his medical needs. The United States Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed

6

by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citing Gregg v. Georgia, 428 U.S. 153, 173 (1976)).

> The Supreme Court has further expounded on prisoners' Eighth Amendment rights:
>
> a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment.

Estelle, 429 U.S. at 106.

A prisoner "claiming that the conditions of his confinement violate the Eighth Amendment must show a culpable state of mind on the part of prison officials," and thus "a prisoner advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs." Wilson v. Seiter, 501 U.S. 294, 294–97 (1991) (citing Estelle, 429 U.S. at 106). Therefore, a complaint must include some factual allegations of the two elements requisite to establish a claim of deliberate indifference, i.e., (1) a serious medical need and (2) a culpable mental state establishing deliberate indifference.

The United States Court of Appeals for the Third Circuit has held that a serious medical need is established where it has been diagnosed by a physician as requiring treatment, easily recognizable by a lay person, or by "reference to the effect of denying the particular treatment." Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (citing Pace v. Fauver, 479 F. Supp. 456, 458 (D.N.J. 1979)). A serious medical need may also be identified where there is "unnecessary and wanton infliction of pain," or where "denial or delay causes an inmate to suffer a life-long handicap or permanent loss...." Id. (citing Estelle 429 U.S. at 103).

The second element, deliberate indifference, consistently has been held to a standard above "mere allegations of malpractice." Id. at 346. However, deliberate indifference does not require a showing of complete failure to provide care, rather *"[w]here prison authorities deny reasonable requests for medical treatment ... and such denial exposes the inmate 'to undue suffering* or the threat of tangible residual injury,' deliberate indifference is manifest." Id. at 346 (citing Westlake v. Lucas, 537 F.2d 857, 860 (6th Cir.1976), cited with approval in Estelle, 429 U.S. at 105)(emphasis added). Further, "[p]rison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for 'an easier and less efficacious treatment....'" Id. at 347 (citing West v. Keve, 571 F.2d 158, 161 (3d Cir.1978)).

Further, the test for deliberate indifference "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients" and "[c]ourts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir.1979) (citing Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir.1977)). Even so, preventing an inmate from receiving recommended treatment or "denial of recommended post-operative treatment or a denial of access to a physician capable of evaluating the need for post-operative treatment ... violates the constitutional standard enunciated in Estelle." Pierce, 612 F.2d 754 at 762; Keve, 571 F.2d at 163. Additionally, deliberate indifference has been found where "the prison official persists in a particular course of treatment "in the face of resultant pain and risk of permanent injury." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir.1999) (citing White v. Napoleon, 897 F.2d 103, 109 (3d Cir.1990)).

8

Where an inmate has a serious medical need, prison officials are required to provide a level of care that is based on an acceptable professional assessment of the inmate. Although the deliberate indifference standard does not sag to the level of negligence, prison officials may not refuse to treat or treat with an eye to efficiency if it would pose an unnecessary or excessive risk to the inmate's health or safety. Nesmith v. Beaver County Jail, No. 11-388, 2012 WL 3245495 *5 (W.D. Pa. Aug. 8, 2012) ; and, see, Szemple v. University of Medicine & Dentistry of New Jersey, 451 F. App'x 187, 191 (3d Cir. 2011)(a claim for deliberate indifference is stated where Department of Corrections dental director determined that tooth should be extracted at outside facility so that inmate could be sedated; this recommendation was denied and tooth was extracted with local anesthesia, causing extreme pain, heart irregularities and profuse bleeding).

Here, it is clear that Plaintiff was not provided recommended dental treatment because Defendants determined that he was ineligible for a furlough, discounted his pain, and chose to ignore the treatment plan provided by the WCCF contracted dentist. A reasonable juror could conclude that Plaintiff's dental pain was a serious medical need and that Defendants were aware of his ongoing complaints. A reasonable juror could further find that Defendants operated pursuant to a policy that WCCF was required to provide outside medical treatment only if an inmate was suffering a medical "crisis." Finally, a reasonably juror could find that having determined that dental pain was not a "crisis," Defendants deliberately failed and delayed treatment for "non-medical" reasons. The record presented, including Plaintiff's testimony, his medical records and the expert opinion offered by Dr. Brian E. Bonsteel, requires the issue of deliberate indifference to be resolved by a jury. See, Farmer v. Brennan, 511 U.S. 825, 837 (1994); Peralta v. Dillard, ___ F.3d ___, 2013 WL 57893 *6 (9th Cir. 2013)(inmate established

9

question for jury regarding claim of deliberate indifference where he suffered chronic dental pain, prison officials were aware of his complaint, and failed to properly treat condition).

### B. "Personal Involvement" of each of the Defendants.

#### 1. Washington County

Defendants broadly argue that Plaintiff has failed to present evidence that the failure to treat his rotting tooth and chronic pain occurred as a result of a policy or practice of Washington County, so as to render it liable to him. The United States Supreme Court has held that municipalities and other local government units qualify as "persons" subject to liability under Section 1983. Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690 (1978). However, a municipality cannot incur Section 1983 liability based on a theory of respondeat superior. Id. at 691. Rather, Section 1983 imposes liability "'if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation.'" See Connick v. Thompson, ___ U.S. ___, 131 S. Ct. 1350, 1359 (2011)(quoting, Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 692 (1978)). "[U]nder Section 1983, local governments are responsible only for 'their own illegal acts.'" Id., quoting Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986). Thus, Plaintiffs who seek to impose liability on local governments under Section 1983 must prove that "action pursuant to official municipal policy" caused their injury. Monell, 436 U.S., at 694. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. Id.; Pembaur, supra, at 480–481. These are "action[s] for which the municipality is actually responsible." Connick v. Thompson, ___ U.S. ___, 131 S. Ct. 1350, 1359 (2011) (quoting Pembaur, supra, at 479–48). A plaintiff must show a

"direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385 (1989).

The United States Court of Appeals for the Third Circuit has refined these definitions, explaining that policy or custom may be established: (1) "[w]hen a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action, issues an official proclamation, policy or edict," or (2) through a "course of conduct ... when, though not authorized by law, such practices of state officials [are] so permanent and well-settled as to virtually constitute law." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir.1990) (citations and quotations omitted). These standards ensure that municipalities may incur liability only for deprivations resulting from the decisions of "those officials whose acts may fairly be said to be those of the municipality." Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403–04 (1997); see also Anderson v. Goga, C.A. No. 11 – 528, 2011 WL 4737569 (W.D. Pa. Oct. 5, 2011).

In the case at issue, Plaintiff has presented evidence of the Washington County policy, which appears to permit transport to outside facilities only for "medical emergencies" and permits the determination of what may constitute a "medical emergency" to be made by a Shift Commander. [ECF No. 81-5, p.3]. The record also provides evidence of Defendant Warden Pelzer's belief that WCCF was not required to provide outside medical treatment for inmates, regardless of the recommendation of their contract medical providers, if the inmate was not eligible for a furlough. [ECF No. 81-4]. On the face of this evidence, the issue of municipal liability is one for jury resolution.

### 2. Individually Named Defendants

Defendants contend that they are entitled to the entry of summary judgment in their favor because Plaintiff has presented insufficient evidence that each of the individually named defendants "was personally involved in any conduct which violated Plaintiff's civil and constitutional rights." [ECF No. 77, p. 24]. Defendants contend that because Plaintiff was seen by a dentist two months after first requesting assistance, each of the Defendants "appropriately relied on the decisions of physicians or the physician's assistant regarding Plaintiff's course of treatment." Id.  This argument is advanced regardless of the fact that Defendants delayed Plaintiff's first appointment with a dentist for two months, and failed to make arrangements to carry out the recommended treatment.  Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment sufficiently details the involvement of each of the named Defendants, first in being aware of the his serious need for medical care, and second, in ignoring Plaintiff's requests for treatment or assistance to arrange the tooth extraction.  Plaintiff has presented evidence through his deposition and/or prison records, that he had notified each of the named Defendants of his tooth pain and suspected infection, and that each failed to obtain appropriate medical treatment. [ECF No. 81]. This evidence is sufficient to present a genuine issue of material fact for jury consideration.

### C. Qualified Immunity

Government officials performing discretionary functions are entitled to immunity where their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A defendant has the burden to establish that he is entitled to qualified immunity. Kopec v. Tate,

361 F.3d 772, 776 (3d Cir. 2004). To determine qualified immunity, the court must consider whether the facts alleged, taken in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right" and also "ask whether the right was clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001); Pearson v. Callahan, 555 U.S. 223, 236 (2009).

The United States Court of Appeals for the Third Circuit recently observed that officers who do nothing in the face of a constitutional violation are not entitled to qualified immunity.

> Qualified immunity is not available where a defendant had actual knowledge of and acquiesced to illegal conduct. "The approving silence emanating from the officer who stands by and watches as others unleash an unjustified assault contributes to the actual use of excessive force, and we .... will not immunize such conduct by suggesting that an officer can silently contribute to such a constitutional violation and escape responsibility for it." Smith v. Mensinger, 293 F.3d 641, 651 (3d Cir. 2002) (citing Baker v. Monroe Twp. 50 F.3d 1186, 1193 (3d Cir. 1995)). Depending on the facts, officers may be liable for the unconstitutional conduct of their colleagues of the same rank, and even superiors. Id.

Christian v. Orr, 11-1795, 2013 WL 311356 *2 (3d Cir. Jan. 28, 2013)

In the case at issue, Defendants make a cursory and broad sweeping claim to their entitlement to qualified immunity, contending: (1) Defendants did not violate Plaintiff's constitutional rights; (2) the law with regard to tooth extractions wasn't clear in 2009; and (3) Defendants' conduct was objectively reasonable.  However, the law with regard to a constitutional obligation to provide care to inmates suffering unnecessary pain from a serious medical need has been clear since at least 1976, when the United States Supreme Court decided Estelle v. Gamble, 429 U.S. at 104.  Further, the record, viewed in the light most favorable to the Plaintiff, raises a genuine issue of material fact as to whether each Defendant was aware of Plaintiff's need for treatment for a condition causing severe chronic pain and yet stood idly by.

13

Given the record presented, at this stage of the litigation, Defendants are not entitled to qualified immunity.

### D. Punitive Damages

Defendants misstate the law regarding Plaintiff's entitlement to punitive damages. Defendants, without citation to any case, assert that because the individually named Defendants were employed by a municipal entity, their liability arises out of "their official capacities," and as such, Plaintiff's claim for punitive damages is against an immune municipality. This is a misleading statement of Plaintiff's claim and the law. Certainly, it is true that punitive damages are not recoverable against a municipal defendant in a Section 1983 claim and, accordingly, Plaintiff cannot recover punitive damages against Washington County. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981). However, it has long been recognized that "individual public officers [are] liable for punitive damages for their misconduct on the same basis as other individual defendants." Smith v. Wade, 461 U.S. 30, 35 (1983). In order to qualify for a punitive damages award, "the defendant's conduct must be, at a minimum, reckless or callous. Punitive damages might also be allowed if the conduct is intentional or motivated by evil motive, but the defendant's action need not necessarily meet this higher standard." Savarese v. Agriss, 883 F.2d 1194, 1204 (3rd Cir. 1989). Accordingly, Defendants' Motion for Summary Judgment with regard to punitive damages is granted solely as to as to Defendant Washington County but denied as to the remaining Defendants.

### E. Conspiracy

Defendants seek the entry of summary judgment as to Plaintiff's conspiracy claim. Defendants quote the law regarding conspiracy claims, fail to apply it to the facts alleged, and broadly state,

> Plaintiff has failed to demonstrate the deprivation of a constitutional right. § 1983 does not create a cause of action *per se* for conspiracy to deprive one of a constitutional right. Without an actual deprivation, there can be no liability under § 1983. Without any showing of a violation of their (sic) constitutional rights, Plaintiff's conspiracy claim fails as a matter of law.

[ECF No. 77, p. 27]. Given the grounds for relief asserted, Defendants Motion for Summary Judgment with regard to Plaintiff's conspiracy claim is denied. See, discussion of Plaintiff's Eighth Amendment claim, supra.

### F. Retaliation

Defendants seek the entry of summary judgment as to a retaliation claim set forth in Plaintiff's Second Amended Complaint. Defendant contends that Plaintiff was appropriately punished for threatening staff members. Plaintiff seemingly concedes the absence of sufficient evidence for a First Amendment retaliation claim but seeks a ruling that evidence of Plaintiff's bad behavior while incarcerated be excluded at any trial of this matter as unduly prejudicial. The Motion for Summary Judgment as to a First Amendment retaliation claim is granted. However, consideration of the admissibility of evidence as to Plaintiff's alleged threats of staff members is deferred until the trial of this matter.

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [ECF No. 76] is granted in part and denied in part as follows:

1. The Motion for Summary Judgment is denied with regard to Defendants' alleged violation of Plaintiff's Eighth Amendment rights for failing to provide prescribed medical treatment for a serious medical need;

2. The Motion for Summary Judgment is denied with respect to Plaintiff's claims against Defendant Washington County for withholding necessary medical treatment pursuant to custom or policy;

3. The Motion for Summary Judgment is denied as to Plaintiff's claims against Defendants King, Pelzer, Temas, Delsandro, Strawn, Cain and Stapleton, but is granted as to Defendant Toprani;

4. The Motion for Summary Judgment is denied as to Defendants' claim of qualified immunity;

5. The Motion for Summary Judgment is granted with respect to Plaintiff's punitive damages claim against Washington County, but is denied as to Plaintiff's punitive damages claims against the remaining Defendants;

6. The Motion for Summary Judgment is denied with respect to Plaintiff's claim for conspiracy; and,

7. The Motion for Summary Judgment is granted with respect to Plaintiff's First Amendment Retaliation claim.

**ORDER**

AND NOW, this 15th day of February, 2013, upon consideration of Defendants' Motion for Summary Judgment [ECF No. 76] and Plaintiff's response thereto, Defendants' Motion for Summary Judgment is granted in part and denied in part as more fully set forth in the accompanying opinion. Judgment is entered in favor of Defendant Toprani and the Clerk shall amend the caption to reflect his termination from this action.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if the Plaintiff wishes to appeal from this Order he or she must do so within thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P.

BY THE COURT,

/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Dated: February 15, 2013

cc:     All counsel of record by Notice of Electronic Filing